## Theodore J. Campau v. Joseph E. Shaw and another.

*Lease by Guardian: Ratification.* The special guardian—*Laws,* 1862, *p.* 11—of *a non compos* made a lease of lands for a term of years, and a portion of the rent was paid in advance. The ward died soon after. The lessees thereupon applied to the heirs to execute an instrument confirming the lease—this they declined to do, but were silent as to expressing any intention to disaffirm the lease.

In an action by the lessees to recover from the estate the rent paid for the unexpired portion of the term for which it was paid: *Held,*

1. That the special guardian had power to execute such lease; but had no power to create a term which should remain valid by virtue of the lease alone, beyond the life time of the ward; and further, that he was accountable for the rent in his official capacity at the time it was received.

2. That the lessees might treat the conduct of the heirs as a refusal to ratify, and that they might recover from the estate the rent paid for the unexpired portion of the term for which they had paid, as money paid without consideration.

*Heard October 24th,* 1866.  *Decided January 14th.*

## Error to Wayne Circuit.

This case came from the Probate Court into the Circuit Court, by way of an appeal from the decision of commissioners appointed to audit claims against the estate of Joseph Campau. The Circuit Court allowed the claim of defendants in error, and the case was removed to this court by writ of error and bill of exceptions.

The person and estate of the late Joseph Campau were under a special guardianship on account of his mental incapacity. His special guardian entered into a lease with Shaw and Botsford, for fifteen years, of a piece of land in Saginaw; and eighteen months rent was paid in advance. Before the eighteen months had elapsed, Mr. Campau died, and Shaw and Botsford claimed the right to recover back the proportion of rent thus paid, which would accrue between the time of his death and the expiration of the eighteen months, on the ground that, if the lease was not

void *ab initio*, it was at least void after the death of said Campau.

*Levi Bishop*, for plaintiffs.

1. The lease appears by its terms, and also by its signature, to have been the instrument of Joseph Campau, entered into by his guardians duly appointed and qualified. The lease was in law, therefore, the act of Campau, performed through another, duly authorized; and it, therefore, bound him the same, as it would if he had executed it himself, in the full possession of his faculties. It had the same effect as acts done by a principal through his agent or attorney. — *University v. Y. M. Society*, 12 *Mich.* 138.

2. The powers of a special guardian are the same, for the time being, as those of a general guardian.—*Laws*, 1862, *p.* 11; 2 *C. L.* 3313, 3305 *and* 3306, *subdivisions* 2 *and* 3.

The general rule is that a guardian not only may, but must, lease the lands of his ward, if he can do so to advantage.— 2 *Kent's Com.* 255 *and notes ; Taylor's L. and T.* § 135; 4 *Cruise's Dig.* 129; 2 *Wilson*, 129, 135; 10 *East*, 491; 5 *Johns.* 66; 10 *Yerger*, 160, 8, 9; 5 *Halst.* 133; 1 *Johns. Ch.* 561; 7 *Id.* 154; *McClellan's Executor's Guide*, 122.

It is difficult to see what possible objection can be urged against this rule. The guardian is bound to make the best bargain he can for his ward; and he is presumed in law so to do if he makes a lease. It is presumed that he does his duty. Such a bargain will be presumed to remain for the benefit of the ward and his representatives during its continuance. It is for the interest of all parties, and it is absolutely necessary to a good bargain, that the idea of permanence should enter into the transaction. I insist that the doctrine, for which I contend, is the only reasonable one on the subject.

It is said that the guardian of an infant shall not lease for a term beyond the majority of the ward. — *Mc Clellan's Executor's Guide*, 123; 2 *Kent's Com.* 255.

The reason of this rule is, that the age of the infant and, by consequence, the time when the wardship and incapacity of the infant will terminate, are well known. There is no such certainty in the case of a wardship, which can only be determined by the death of the ward.

It was said *arguendo* in the court below, that a guardian might sell the property of his ward, but could not lease it. In reply to this it may be said in brief, that the larger includes the less. A lease is but the sale of a term less than the fee. In the language of the books it is a particular estate carved out of the general estate. If the whole estate or interest could be sold, any interest less than the whole estate could be sold, or leased, which is the same thing.

3. The court below charged the jury that if the ward, during his life, had recovered his faculties, that he might have affirmed or disaffirmed the lease entered into by his guardian. This was erroneous: Most certainly the ward was bound by the lease during his life. The rule here laid down by the court would render the property of a ward worthless, even during the time of his incapacity. No reasonable man would accept a lease of a guardian, if the lease might be terminated by the ward at any moment. Such a doctrine takes from the property of a ward its whole or a great part of its value. The charge was more than the claimants asked, and its tendency was to prejudice the case against the administrators in the minds of the jury.

4. This lease was not absolutely void, either before or after the death of Campau. The most that can be said against it is that it was voidable. As I have argued, it was not voidable by him, even though he had recovered his faculties. It was not voidable by the lessees, who

entered into it as competent persons, and with their eyes open. If voidable at all, it was so only at the instance of the heirs of Campau after his death. This is shown by the authorities already cited. — 5 *Halst.* 133; 1 *Washb.* 304 – 7.

If the lease was voidable by the heirs, they should be held to act on the subject promptly and unequivocally, on the death of Campau. Delay alone should be held an affirmance; for it is laid down that slight acts, and even inaction itself, even in the case of infants, will be evidence of a ratification. — 1 *Washb.* 304.

We proved that there had been no act of disaffirmance whatever by the heirs; while on the other hand the administrators, who are also heirs, had repeatedly affirmed the lease, so far as their official action could go, by demanding the payment of rent.

5. There is good sense in holding the acts of an infant voidable at his option, on his arrival at maturity, because the law presumes that there may be improvidence in the acts of an infant. The presumption is not that there is improvidence, and, therefore, that the acts are void; but that there may be improvidence, and, therefore, that the acts are voidable.

The reason of the rule does not hold at all in the case of an adult under guardianship. The guardian is a judicious person selected by the probate court. He is presumed in law to make such bargains only as are beneficial to his ward. No theory of improvidence enters into the transaction. The provident acts of the guardian are, in contemplation of law, the acts of the ward. The law presumes that all is done for the best interest of all persons interested. It is difficult to see upon what principle such a transaction can be held either void or voidable.

There was nothing unreasonable about this lease. If there had been, it was for the court of probate to control it, as he controls the guardian. It appears that the judge of probate expressly approved this lease.

6. If this lease was absolutely void after the death of Campau, then the wrong person is sued here. If the lease was thus void, then all the acts of the guardian relating to the time of the lease, which might run after Campau's death, were also void. Nothing which the guardian could do with reference to that time could bind the estate. Of course, the rent in question was not paid to Joseph Campau. It went into the hands of the special guardian. But the lease being void, the receipt of money by the special guardian for the rent, which was to accrue from the death of Campau to the expiration of the eighteen months, was not an official, but was an individual act of the special guardian. If the lease for that time was void, the receipt of the rent must have been also void for the same time. That receipt could not bind the estate, or render it liable. The whole transaction must stand or fall together. If, therefore, these claimants have a just demand at all, it is not against the estate, for the void acts of the special guardian; but it must be against Mr. Daniel J. Campau individually for money had and received to the use of the the claimants.

In any view of the case, therefore, upon authority and upon principle, the claimants were not entitled to judgment, and it should be reversed with costs.

*S. T. Douglass,* for defendants.

CHRISTIANCY J.

The late Joseph Campau having, from old age, become mentally incapable of managing his affairs, Henry C. Knight, Esq., was duly appointed by the Probate Court as his guardian.

An appeal having been taken from this appointment to the Circuit Court, Daniel J. Campau was, on the twenty-third day of January, 1862, duly appointed and qualified

CAMPAU *v.* SHAW.

as special guardian of the ward, pending the appeal, as provided by the act of January 17, 1862.—*Sess. L. pp.* 11 *and* 12.

As such special guardian, he had (so far as is material to the present case), during his continuance in office, the same rights and powers as a general guardian, over the ward and his estate.— *See acts above cited ; also Comp. L.* §§ 3313, 3305 *and* 3306, *sub.* 1 2.

On the first day of May, 1863, the special guardian executed in due form, under seal, a lease to Shaw & Botsford, the defendants in error, of a lot of land in Saginaw county " for the purpose of erecting a steam saw mill and other improvements" thereon, for the term of fifteen years, for the rent (for the first five years, all that is necessary to notice here) of four hundred and fifty dollars per annum, payable semi-annually in advance, which Shaw & Botsford thereby covenanted to pay.

Immediately upon the execution of the lease, Shaw & Botsford, who were then only bound to pay the first semi-annual installment, paid to the special guardian six hundred and seventy-five dollars as the rent for eighteen months in advance.

Joseph Campau, the ward, died on the twenty-third day of July, 1863; the special guardian remaining in office up to that time, and the defendants in error having soon after applied to some of the heirs for a confirmation of the lease, which they declined to execute, presented to the commissioners appointed by the Probate Court for examination and adjustment of claims against the estate, their claim for five hundred and seventy-one $\frac{25}{100}$ dollars (and interest) being the balance of the six hundred and seventy-five paid, after deducting the proportion which had accrued as rent, at the time of Joseph Campau's death, on the ground that the lease ceased to be valid after that event. This claim was disallowed by the

commissioners, from whose decision an appeal was taken to the circuit court, where the claimants obtained a judgment for the amount of their claim, and the administrators have brought the cause into this court by writ of error, alleging exceptions. The only questions we deem it necessary to consider upon the exceptions are those we proceed to consider.

We see no reason to doubt the power of the special guardian to lease the real estate of his ward, which might otherwise be rendered useless. Whether this power has any other limitation in a case like this we are not called upon to decide, but we think it very clear the power in this case did not extend to the creation of a term which should remain valid (by virtue of the lease alone) beyond the life time of the ward; and that the lease, though good up to the time of his death, became by that event invalid as against his heirs, and probably (though the point does not arise here), as against his administrators.

But we do not think the lease was so absolutely void for the remainder of the term as to be incapable of confirmation by the heirs and other parties claiming under the ward. They might treat it as void at their option; but if they chose to confirm it, it would be binding both upon them and the lessees. But the lessees would not be bound to accept a confirmation by a part of the heirs or other persons who had a right to disaffirm it, without the whole; nor to accept a term in an undivided interest in the land; nor for a period less than the whole remainder of the term. The record discloses no evidence tending to show any confirmation or ratification by any of the heirs. There was some evidence tending to show that the administrators treated it as a subsisting lease after the death of the intestate, by calling upon the lessees for payment of rent and taxes

according to its terms; but this action of the administrators did not bind the heirs.

It was strenuously urged by the counsel for plaintiffs in error that the mere silence of the heirs, in not expressly objecting to the validity of the lease, and their failure to take any affirmative action for annuling it, operated of itself, as an affirmance or confirmation of the lease; and that the lessees were not at liberty to treat it as void until the heirs had indicated their intention to disaffirm it. However this might have been, had none of the heirs been called upon to confirm it, is a question which does not arise in the present case. Nor—if the matter had been allowed to run along in silence, the lessees, with the knowledge of the heirs, making the expensive improvements contemplated and paying rents and taxes—are we called upon to determine whether the acquiescence of the heirs might not grow into an equitable estoppel or even a legal confirmation; nor at what time or under what circumstances such effects might take place. Immediately upon the death of the ward, the lessees, who, as the evidence shows, had already commenced expensive and permanent improvements, were entitled to know, before they should proceed further with their expenditures and improvements, whether the heirs intended to confirm the lease, and to have that confirmation in due and proper form so as to render it valid and effectual in law under the statute of frauds; and they could not be expected to go on with their expenditures, or to rest quietly upon so precarious a title as might or might not accrue to them from an acquiescence of the heirs in such expenditures and use of the property, while it was entirely uncertain whether they would acquiesce or not; whether they would confirm the lease or disaffirm it, and compel the lessees to lose the money they might expend in trying an experiment which could be tried only by running the risk of the loss. The condition of the lessees might,

perhaps, be rendered safe enough after the acquiescence of the heirs should have grown into an estoppel or confirmation; but how were they to know there would be any such acquiescence? and until then, their condition would be one of great risk—a risk which they could not be legally, or even honestly, asked to assume.

The lessees, as the evidence shows, within a week after the death of Joseph Campau, like fair and prudent men, applied to two of the heirs, and requested them to execute an instrument confirming the lease, and also to obtain the execution of such an instrument by the other heirs. These requests were renewed from time to time afterwards, but were refused. It does not appear that they said anything expressly declaring an intention to disaffirm the lease, but merely declined the requests to confirm, and remained silent. And it is seriously and strenuously urged by their counsel that they had a right to take this course, and yet hold the lessees bound by the lease. But this attempt to reserve to themselves, under these circumstances, the power at any future day to affirm or disaffirm the lease, as future developments and the improvements of the lessees might, in their opinion, render most for their interests, is difficult to be reconciled with good faith and fair dealing. It was calculated to put the lessees upon their guard against incurring further risks; and, in our view, fully justified them in treating the refusal as a disaffirmance, or at least an intention to disaffirm, and left the lessees at liberty to treat it as invalid from the death of Joseph Campau.

But it is urged that if the lease is to be treated as void after Joseph Campau's death, then so much of the money paid as was applicable to that portion of the rent thereafter to accrue, was not received by the special guardian in his official, but in his individual capacity; that the estate is not, therefore, liable to the

lessees, but that their right of action, if any, is against the special guardian in his individual capacity.

The evidence does not show whether the special guardian in fact accounted for or paid over the amount to the estate; and the right of the lessees to call upon the estate for the amount must, therefore, depend upon the question whether the guardian, immediately upon the receipt of the money, was legally accountable for it as the money of the ward or his estate — as for money coming to his hands by virtue of his guardianship; or whether he had a right, if then called upon to account in the Probate Court, to retain it as his own, as against the ward or his estate.

At the time of the execution of the lease and receipt of the money, it was entirely uncertain when the death of the ward might occur. He might live for the whole fifteen years, and then the lease would be valid for the whole term as against all parties. He might die the next day after the execution of the lease; and if the guardian could, the next moment after the money was received, have refused to account for any part of it, or hold any part of it in his individual capacity, he could, with equal right and upon the same ground, have retained the *whole*, and refused to account for any of it; for it was uncertain whether the ward would live through that single day. If, therefore, his accountability should depend upon the time when the ward should actually die, he could not, at the time when it was received, have been held accountable at all. But in legal contemplation, the ward might have recovered his capacity the next week or the next month, or the appointment of the general guardian, from which the appeal was taken, might be affirmed, and the special guardian in either case called to an account; and the lease in either case would continue valid for the whole term, or so much of it as the ward should continue to live.

CAMPAU v. SHAW.

And the Probate Court might probably, of its own motion, call upon the special guardian at any time to account, for the purpose of seeing that he was properly managing the estate, and properly applying the money. For these, among other reasons, I can not doubt that the special guardian was accountable for this money in his official capacity, at the time it was received, and being so liable, he and his bail must continue so until paid. In fact, so far as this case is concerned, I think we are bound to presume he has accounted for it to the estate. Though he had no right to demand, he had a right to receive this money when paid to him, as rent in advance; and if he did, as the case shows, receive it as rent in advance, he received it in his capacity as guardian. There is no pretence that it was understood to be paid to, or received by him in any other capacity, or that it would have been paid to him otherwise. He, as guardian, had no right to treat the lease as void, even after the death of the ward; for with that event his guardianship ceased, and until that event it was valid as to all parties. After that event, the heirs (or the heirs and representatives) had the right to confirm it and hold the lessees upon it, or to disaffirm it, and thereby release them. But in either case, the guardian, as such, was accountable for the money at the time it was received. The payment to him operated as payment to the ward or his estate, and the lessees are entitled to recover the amount from the estate as so much paid upon a consideration which has failed, upon a principle analogous to that which authorizes the recovery of money paid upon a contract which has been rescinded. *Raymond et al. v. Bearnard*, 12 *Johns.* 274; *Gillett v. Maynard*, 5 *Id.* 82; *Rice v. Peet*, 15 *Id.* 503; *Wheeler et al. v. Board*, 12 *Id.* 363; *Burr v. Veeder*, 3 *Wend.* 412.

Had the covenant been to pay a gross sum down for a lease executed by the guardian for the fifteen

years, there might have been some plausible ground for saying that the lessees took upon themselves the risk of the ward's living for that length of time. But here the payments were semi-annual, and the whole transaction shows that neither party expected the rent to be paid for any period for which the lessees should not be allowed to enjoy the premises.

There is no error in the record, and the judgment must be affirmed, with costs to the defendants in error.

The other Justices concurred.