## Maggie E. Lyon v. Jerome B. Waldo and others.

*Mortgages: Illegal consideration: Settlement of prosecution for adultery: Ratification: Estoppel.* Complainant having left her husband on the ground that he was unfaithful to her, with the fixed purpose of remaining away from him permanently and filing a bill for a separate maintenance, made a criminal complaint and procured a warrant to issue against him for adultery; he was arrested, substantially *flagrante delicto*, and thereupon settled the criminal prosecution by giving, among other things, a bond secured by mortgage, conditioned to pay complainant two hundred dollars every six months during her natural life, and in case of default, the round sum of five thousand dollars and all arrears of interest, as a gross amount; complainant then filed her bill for divorce on the ground of adultery, making no claim for any allowance, and obtained a decree, no defense being made; several payments of the semi-annual installments were made, but further payment at length being refused,

LYON v. WALDO.

the bill in this case was filed to foreclose the mortgage for the gross sum of five thousand dollars and back interest: —

Upon the question whether the mortgage was absolutely void and incapable of being enforced, or voidable only, and so confirmed by the subsequent acts of ratification and payment as to be rendered enforceable, the court was equally divided, GRAVES and CAMPBELL, JJ., holding it void, and COOLEY, CH. J., and MARSTON, J., holding it voidable only, and cured by ratification.

*Contracts: Illegal consideration: Confirmation: Part performance.* Where a contract is tainted with illegal consideration it is rendered incapable of confirmation by acts of part performance, and whatever is done towards carrying it out is regarded as done under the obligation of honor, and not under the sanction or obligation of law, and what remains stands on the same basis.—Per GRAVES and CAMPBELL, JJ.

*Contracts: Illegality: Defense: Public policy.* The defense of illegality is a peculiar one, and in its nature differs from most others; the objection is rather that of the public, speaking through the court, than of the defendant as a party to the contract. The law disallows all proceedings in respect of illegal contracts, not from any consideration of the moral position and rights of the parties, but upon grounds of public policy.— Per GRAVES and CAMPBELL, JJ.

*Adultery: Initiation of prosecution: Injured spouse: Settlement: Statute construed.* The legislative enactment confining the initiation of a criminal prosecution for adultery to the. injured spouse, does not operate to take private compromises between the accuser and the accused of such prosecutions out of the general rule. The statute (*Comp. L., 1871, §§ 7870-2*) making provision for the settlement of certain minor prosecutions, requires the settlement to have the sanction of the court, and no express provision is made for the settlement of prosecutions for adultery.—Per GRAVES and CAMPBELL, JJ., COOLEY, CH. J., concurring.

*Adultery: Prosecution: Injured husband or wife: Statute construed.* The reason for limiting to the injured spouse the right to move the criminal law in such cases, finds its proper bounds in considerations of family peace and the good of society, and it is incapable of being so far extended as to imply a right to resort to public prosecution to compel a division of property. The construction contended for, instead of favoring family peace and forgiveness and forbearance, would tend to encourage persecutions and plots and schemes unfriendly to domestic concord. —Per GRAVES and CAMPBELL, JJ.

*Husband and wife: Separate maintenance: Arrest for adultery: Settlement.* The complainant being justifiable at the time she caused the arrest of her husband in refusing to live with him longer and in demanding a reasonable separate maintenance, she might negotiate with the defendant respecting it, and unless fraud or duress was employed, the courts ought not to disturb their arrangements so far as respected the property.—Per COOLEY, CH. J., MARSTON, J., concurring.

*Duress: Securities: Fraud: Laches: Ratification.* Duress is a good defense, if it is made in good faith and seasonably; but the misuse of legal process to obtain securities is to be regarded as a species of fraud; and where a party relies upon it in equity as a ground for avoiding his security, he is bound as in other cases of fraud to move promptly, and must not sleep on his rights; and if he goes on and by his conduct assumes the contract to be in force until the position of the other party to it has-

LYON v. WALDO.

changed, he ought to be held to have affirmed it.—Per COOLEY; CH..J.,. MARSTON, J., concurring.

*Voidable securities: Ratification: Estoppel: Fraud.* The defendant in this. case having for two years recognized the securities as valid,.and made. payments upon them, and complainant, relying upon the· arrangement. already made, having procured her divorce without asking for·or·obtain.. ing any alimony, his course in allowing her to suppose he intended to· recognize the validity of the securities, and in repudiating them only after in reliance upon this supposition she had lost other rights,.works: such a fraud upon her as deprives him of any consideration in equity.— Per COOLEY, CH. J., MARSTON, J., concurring.

*Adultery: Criminal prosecution: Settlement: Statute construed.* MARSTON,. J., holds that under our statute, adultery, although a felony, is an excep-. tion to the general rule, in that the injured husband or wife·only has. power to commence the prosecution, and that this gives the· person aggrieved a control over the prosecution which is not given in any other· class of felonies.

*Heard January 11. Decided April. 24.*

## Appeal in Chancery from Ingham Circuit.

*D. & W. Johnson* and *H. B. Carpenter*, for complainant, as to the· claim that the bond and mortgage were void because executed· under duress, argued that it clearly appears from the evidence· that defendant was under a legal arrest, and was guilty of the· crime charged in the complaint, and that legal imprisonment by order of law is not duress by imprisonment: *Bouvier Law· Dic., 513; 1 Pars. on Cont., 319; Rood v. Winslow, 2 Doug., 68; Peck v. McAlpine, 3 Caines, 166; Watkins v. Baird, 6 Mass.,. 506; 2 Kent Com., 452; Matter of William Wells, 18 How., 307; Walbridge v. Arnold, 21 Conn., 424.*

A deed executed under duress is not void, but only voida- ble, and it may be ratified and affirmed by the party upon whom the duress was practiced: *Herman on Estoppel, 244; 1 Parsons on Cont., 322; Bacon Ab., Duress " C."*

We concede that securities given to compromise a felony,. where the public alone are interested in the prosecution, could not be enforced by process of law; but the legislature,.in. limiting the right of prosecution to the injured party, have· clearly indicated that they regarded injuries of this kind more· of a private than a public wrong.—See *Briggs v. Withey, 24. Mich., 136.*

We submit that it would be against public policy to deprive· the injured party of the right to settle cases of this kind,.pro— vided no undue advantage is taken against the wrong-doer.. And the facts in this case. do not show any oppression or any· undue influence used by the complainant or her agents.. Ample·

time was given for reflection and for the procurement of coun-
sel. The husband had been living in adultery. It was open
and notorious. The amount secured for the support of the
complainant was not unreasonable, in view of the pecuniary
circumstances of the defendant, and we add that this settle-
ment was made with the consent of the prosecuting attorney.
There can be no pretense that the prosecuting attorney was
influenced by any pecuniary or improper considerations.

We think it is clearly inferable from the testimony in the
case that the complainant, at the time of this settlement, had
made up her mind to separate permanently from her husband,
and when that separation was pronounced by the court in the
decree for a divorce, in consideration of the amount received
in this settlement, no alimony was asked for.

*J. C. Shields* and *M. V. Montgomery*, for defendants.

The bond and mortgage were obtained by duress and coer-
cion practiced upon defendant. When a person makes a con-
tract under duress or terror the courts will not enforce it: *1
Story Eq.*, § 239. Some authorities hold that if there is the
slightest ground to suspect imposition, the contract will be
set aside: *Wilkinson v. Stafford, 1 Ves. Jr., 43; 1 Story Eq.*,
§239. The duress may consist of either imprisonment or threats
of imprisonment: *Taylor v. Jaques, 106 Mass., 291.* If a per-
son is arrested under a legal warrant and by a proper officer,
yet if the object is to extort money or enforce the settlement
of a civil claim, it is a false imprisonment by all who have
directly or indirectly procured the same, and any conveyance
made under the influence of such imprisonment is void:
*Hackett v. King, 6 Allen, 58; Richards v. Vanderpool, 1 Daly, 71;
Brooks v. Berrifield, 20 Ind., 97; Bush v. Brown, 49 Ind., 573;
Seiber v. Price, 26 Mich., 518; Gallaway v. Burr, 32 Mich., 332.*

The securities are void because given in view of and for
the purpose of compounding and compromising a felony. No
action can be maintained to enforce performance of any con-
tract the consideration of which, in whole or in part, was the
compounding of a crime or the stifling of a criminal prosecu-
tion: *Comp. L.,* § 7672; *Bigelow v. Woodward, 15 Gray, 560;
Clark v. Pomeroy, 4 Allen, 534; Taylor v. Jaques, 106 Mass.,
291; Fellows v. Van Heyring, 23 How. Pr., 230; Bettinger v.
Bridenbecker, 63 Barb., 295; Conderman v. Hicks, 3 Lans., 108;
Loomis v. Cline, 3 Barb., 453; Fay v. Oatley, 6 Wis., 45; Snyder
v. Willey, 24 Mich., 136; 33 Mich., 483, 495; 16 Mass., 91; 18
Pick., 440; 5 Vt., 42; 9 Vt., 23; 5 N. H., 553; 2 South, N. J.,
578; 13 Wend., 592; 6 Dana, 338; 11 Vt., 252.*

That the purpose of this prosecution was to compel the giving of this mortgage, and that the whole or a substantial part of its consideration was the adjustment of this charge, is hardly attempted to be concealed or disputed.

If so, it is idle to talk about the security being *voidable* and liable to be made obligatory by subsequent ratification. In the first place, it was *absolutely void.*

An *illegal, unlawful* consideration cannot be rendered a legal and lawful one by subsequent ratification.

If A murder a man at the instigation of B, for which B gives him his note for $1000, can it be said that because B has paid the annual interest on his note for two or three years that it thereby becomes a valid instrument?

This question is not one of how much defendant ought to have paid the complainant.

The question is, was any portion of the consideration for which this mortgage was given the "compounding or concealment of a felony." If so, the security is absolutely void, and cannot be galvanized into life by subsequent acquiescence.

If A owe B $1000 cash, and A declines to secure it, and while matters are thus situated B discovers that A has committed murder; he thereupon goes to A and proposes to conceal the crime and cancel the debt for a mortgage of $2000, which A gives; such instrument is void and incapable of ratification, and *no part* of it can be enforced.

GRAVES, J :

For some years before August 26, 1871, and thereafter until June 27, 1872, complainant was the wife of the defendant Jerome B. Waldo, and as husband and wife they lived together at Williamston, in Ingham county, up to the date first mentioned. At or just previous to that time she became satisfied that he was guilty of criminal intercourse with a woman living a few rods distant, and she hence withdrew from him at that date with the fixed purpose of not living or cohabiting with him longer, and which purpose she has kept; and with the further purpose of obtaining, as the bill states, a separate maintenance.

Desiring legal advice and assistance, she came to this city and consulted with and employed Mr. Wiley, a lawyer then in practice here. She seems to have placed her inter-

ests entirely in his hands, and to have empowered him, so far as she was capable, to take such steps as he in his discretion might deem best, and she seems to have fully acquiesced in his doings as they occurred, and to have sanctioned the whole as though done by herself in person. Under his direction, and on her complaint therefor, a warrant was issued by a magistrate against Waldo, then her husband, for the crime of adultery, and given to an officer for service. This was on Saturday, the 26th of August, and the officer, following Wiley's directions, deferred service until the next day, Sunday, in the evening, when, and about half-past ten, Waldo was arrested at the house of the woman before mentioned, under circumstances nearly or quite conclusive that he was then at least criminal. On the succeeding Tuesday, being the 29th of August, he appeared before the magistrate under arrest upon the warrant. The prosecuting attorney having consented that Wiley, who had made a request therefor, should have control of the prosecution, the examination was by consent adjourned until the 4th of September, at four o'clock in the afternoon. On the forenoon of Monday, the 28th of August, and being the day succeeding the arrest, negotiations were begun between Wiley and Waldo on the basis of a pecuniary benefit from Waldo to complainant on the one hand, and a stoppage of the prosecution on the other, and during the interval between the amicable adjournment of the examination on the 29th of August and the 4th of September, to which the adjournment extended, the negotiations terminated in an agreement. Waldo paid Wiley one hundred dollars in cash, gave his note for four hundred dollars more, which he paid subsequently, and paid as costs of the criminal proceedings twenty-six dollars and forty cents. He also gave Wiley, in trust for complainant, his bond, conditioned for the payment for her benefit of two hundred dollars every six months during her natural life, and with a stipulation to pay the round sum of five thousand dollars and all arrears of interest, as a fixed gross amount in case of default on any half-yearly payment, and

to secure performance of this bond Waldo, together with his brother James and wife, gave a mortgage on real estate. On the other hand, the criminal prosecution was stopped by Wiley's direction, and was not resumed.    Neither was any other instituted, and the offense was treated as a matter settled and barred.

During the entire transaction Wiley was allowed to guide, control and use the prosecution in the name of the people, without interference, to obtain the money and securities before mentioned, and they were given and taken as satisfaction for the offense imputed, the costs and charges of the magistrate and arresting officer, the individual charge made by Wiley, and to secure the stifling of the pending criminal prosecution.

Within two or three days, and on the fifth of September, complainant filed her bill against Waldo for a divorce from the bonds of matrimony, and the specific charge in the bill was an act of adultery alleged to have been committed on the evening of the arrest, and which was considered provable by the arresting officer and a person who attended him.    No claim for any allowance was preferred, and no allowance was made.

Waldo offered no defense, and on June 27th, 1872, divorce was granted.    A few days later, and in the next month, he married the woman implicated in the previous charges against him, and a little more than two years thereafter complainant married her present husband, Mr. Lyon.

Waldo proceeded to make the stipulated half-yearly payments, and continued doing so up to the payment due August 29, 1874, but after paying that, he refused paying further.

Wiley died intestate in April, 1874, and complainant filed the present bill in her own name to foreclose the mortgage and claimed the gross sum of five thousand dollars and back interest.

The defendant, her former husband, answered and urged several grounds of defense, the most material being that

the mortgage was contaminated by unlawful consideration and hence was not enforceable.

After examination the circuit judge became convinced that the recourse to the criminal law on the part of complainant was not in good faith; that the prosecution was moved and used for the purpose of private gain and advantage and not to vindicate public justice, and that in fact the giving of the mortgage was brought about directly by the influence of the proceeding, and that the giving up of the prosecution was matter of consideration; but he came to the conclusion after all, that the security was not made thereby utterly uncollectible, but only voidable, and that Waldo's subsequent acts of payment confirmed it and rendered it enforceable; and acting in this view he allowed a decree of foreclosure, and Waldo appealed.

Now there is no room for controversy about the facts. There is no evidence to show that the securities were given or received as a provision for complainant's maintenance as a married woman apart from her husband. On the contrary, the proof is strong that the arrangement contemplated a speedy dissolution of the marriage at complainant's instance. And again, there is no evidence to show that the existence of the securities had any influence upon the matter of alimony or allowance in complainant's suit for divorce. That the criminal proceeding was made use of solely to drive the accused to make over or secure to the accuser and her agent something like an estimated one-third of his property, and that the mortgage originated in the execution of this plan and as part of its fruit, and that a portion at least of its consideration was the suppression of the prosecution, are facts substantially admitted, and in such a state of facts I cannot concur with the circuit judge. It is of no consequence whether what was obtained did or did not exceed the claims of moral justice. The question concerns the means employed to get what was obtained. The law wisely and sternly disallows the use of measures which dishonor it and falsify its processes and pervert the duty of its

ministers to reach ends which in the abstract may be excellent, and the nature of the thing and the principle on which the court acts in entertaining such objections in cases to enforce contracts are inconsistent with the notion that acts of part performance can obviate the difficulty or reverse the duty of the court.

Where a contract is tainted with illegal consideration it is rendered incapable of confirmation by acts of part performance. Whatever is done towards carrying it out is regarded as done under the obligation of honor, and not under the sanction or obligation of law, and what remains stands on the same basis. The performance of it may be required by the sentiment of honor, but the law does not attach and bind the party to complete the unlawful compact. The principle is recognized in *Snyder v. Willey, 33 Mich., 483,* and in other cases too numerous for citation. *Cole v. Gibson, 1 Ves. Sr., 503,* is one among the earlier authorities.

The defense of illegality is a peculiar one and in its nature differs from most others. The objection is "rather that of the public, speaking through the court, than of the defendant as a party to the contract. The law disallows all proceedings in respect of illegal contracts, not from any consideration of the moral position and rights of the parties, but upon grounds of public policy."—*Fry on Sp. Per., ch. 9, § 309.* However dishonorable, however culpable the defendant may be, the result is the same, and however numerous may have been the acts of part execution, they cannot cleanse the contract of the impurity of its origin and cause it to be the duty of a court of justice to respect and enforce it.

The learned counsel for complainant makes no question concerning the general rule. He argues, however, that the case is not within it; that in confining the initiation of a criminal prosecution to the injured spouse, the legislature clearly indicated their opinion that the offense of adultery partakes more of the character of a private than of a public

wrong, and is not properly subject to the same regulations or the same consideration as other offenses, and that public policy requires that private compromises of such prosecutions should be permitted to the accuser and accused in case there is no oppression or moral unfairness, and that testing the present transaction by this rule, the objection to the enforceability of the mortgage is not sustained. We cannot yield to this argument. It contains assumptions and implications which are hardly warranted. The legislature must be taken to have been cognizant of the reasonable and long well settled doctrine in law and equity on this subject; and had it been designed to exclude its application in cases of this sort it is reasonable to suppose the will to do so would have been distinctly made known. This has not been done. So far from it, the actual facts and incidents imply the contrary. The mind of the legislature was particularly turned to the subject of authorizing private adjustments of matters criminally prosecuted, and they made specific provision for the settlement in that way of some kinds of public prosecutions, but not for public prosecutions for adultery. And their sense of the mischief which might arise from an unrestrained power to settle, even in the class of cases contemplated, is plainly shown by the conditions imposed. The settlement is required to have the express sanction of the court.—§§ 7870, 7872, C. L.; Com. v. Dowdican's Bail, 115 Mass., 133.

The implication is certainly somewhat strong against any purpose to tolerate private settlements of public prosecutions for adultery; at any rate to the extent of making their suppression by such means a valid consideration for securities made by the accused to the accuser.

When the legislature included adultery among felonies, they were naturally observant of the offense in its domestic as well as other aspects, and were led to take pains to confine the right to put the criminal law in motion to the injured spouse. The final purpose was the good of society, and as that must be closely connected with the peace of

families, it was considered that the latter ought not to be left at the mercy of outside informers, or that the injured party should be restrained or precluded from forbearing complaint. If the innocent spouse preferred to live on without calling forth the energy of penal law and making public family infelicities and impurities, and perhaps visiting innocent children and other relatives with affliction if not disgrace, it was deemed expedient and most for the general good that the public should not be allowed to intervene.

The reason for limiting to the injured spouse the right to move the criminal law would seem to find its bounds in considerations of this sort, and we think it incapable of being so far extended as to imply a right to resort to public prosecution to compel a division of property. When the innocent party has resolved to forbear no further, and has actually set the law in motion and the case is launched, the reason and policy of the provision limiting the right of complaint would seem to be satisfied, and the public right would appear to have attached. The construction contended for, instead of favoring family peace and forgiveness and forbearance, would tend to encourage persecutions and plots and schemes unfriendly to domestic concord. A new and unworthy inducement to prosecute would be held out, and that its influence in families and communities would in many ways be extremely pernicious, seems too plain to admit of controversy.

In what has been said concerning the invalidity of securities made to stifle a prosecution for adultery, there has been no purpose to imply any opinion touching any penal liability of the party who prosecutes and assumes to compromise. No question of that sort is considered as involved.

Finally, in view of the facts disclosed, I see no ground on which the mortgage can be regarded as an enforceable security, and it follows, therefore, that the decree below should be reversed, and the bill dismissed.

CAMPBELL, J., concurred.

COOLEY, CH. J:

I should agree with Mr. Justice Graves that there could be no reasonable doubt that the mortgage in suit was obtained by means of the prosecution for adultery, but it does not necessarily follow that the prosecution was instituted for that purpose.    The guilt of the defendant appears to have been unquestionable, and the criminal proceedings were certainly not colorable, and they were not conducted in a manner specially oppressive.    The arrest, it is true, was made at an unusual hour, but the time seems to have been selected with a view to detecting the defendant *flagrante delicto,* and if not excusable, the choice of time was certainly not very censurable.

The point in which I disagree with the opinion just read is, in holding the security wholly void; and upon that I shall state my views very briefly.    The complainant when she caused her husband to be arrested was fairly justifiable in refusing to live with him longer, and in demanding a reasonable separate maintenance.    Had she filed her bill for divorce and maintenance, the court would unquestionably have awarded both.    Having this legal right, she might negotiate with the defendant respecting it, and unless fraud or duress was employed, the courts would not disturb their arrangements so far as respected the property.    So much is unquestionable.

The husband entered into such negotiations, which resulted in the giving of the securities in suit, but he claims that these were extorted from him by duress.    Duress is a good defense, if it is made in good faith and seasonably; but the misuse of legal process to obtain securities is to be regarded as a species of fraud.—*Seiber v. Price, 26 Mich., 518; Gallaway v. Burr, 32 Mich., 332.*    And where a party relies upon it in equity as a ground for avoiding his security, he ought, as in other cases of frauds, to move promptly, and not sleep upon his rights.    If he goes on and by his conduct assumes the contract to be in force

until the position of the other party in respect to it has changed, he ought to be held to have affirmed it.—*De Armand v. Phillips, Wal. Ch., 186*.

Let us see, then, what was done by the parties respectively in this case after the securities were given. For two years, at least, the husband recognized the securities as valid, for he made two annual payments upon them. Meantime the complainant had proceeded to obtain a divorce from him. Relying upon the arrangement already made, she asked for and obtained no alimony. This was a very important change in her circumstances as regards her right to a maintenance from the husband, and if the husband allowed her to suppose he intended to recognize the validity of the securities, and only repudiated them after, in reliance upon this supposition, she had lost other rights, this was such a fraud upon her as deprives him of any consideration in equity. And it is a significant fact that we only hear of the repudiation of the securities after Mr. Wiley, who acted as trustee in taking them and who was cognizant of all the facts, has passed away, so that complainant cannot have the benefit his explanations.—See *Campau v. Shaw, 15 Mich., 226*.

I am therefore of opinion, on the facts shown, that defendant is not entitled to relief. I base my conclusion upon the delay, and the change in the condition and circumstances of the parties induced by or accompanying the acquiescence in the securities.

I cannot agree with complainant's counsel that the injured wife is entitled of right to settle criminal prosecutions for the adultery of the husband. The power to do so would be susceptible of innumerable and enormous abuses, and would prove intolerable. But for the reason stated, I think the decree should be affirmed.

MARSTON, J:

I concur in the opinion of the Chief Justice in this case for the reasons therein stated, and the additional reason

LYON *v.* WALDO.

that under our statute, adultery, although a felony, is an exception to the general rule, in that the injured husband or wife only has power to commence a prosecution for such an offense. This gives the person aggrieved a control over the prosecution which is not given in any other class of felonies. This distinction was clearly recognized and acted upon in *Briggs v. Withey, 24 Mich., 136*.

The court being equally divided as to whether the decree below should be affirmed or reversed, the same is affirmed under the statute.