JOHN M. BRUCE, JR., AND OTHERS, APPELLANTS, *v.* JAMES S. DAVENPORT, AND OTHERS, RESPONDENTS.

*Contract—Discovery of Fraud—Time of Disaffirmance.*

It is the duty of a party who proposes to disaffirm as fraudulent a contract entered into by himself, partner, or agent, to do it at once, upon discovery of the fraud.

If, after discovering the fraud by which he was induced to enter into the contract, he remain silent, or inactive, and give no intimation of a purpose to disaffirm until he finds the contract likely to prove unprofitable, he will then be estopped from disaffirmance.

One of the partners of a firm in the absence of his partner was, by false representations, induced to endorse a note in the name of the firm. On the return of the partner, the fraudulent representations were discovered, and the partners were dissatisfied with the party procuring the endorsement, but they gave no notice of disaffirmance for the period of three months, and further availed themselves of the benefits of such endorsement: *Held*, the firm was bound thereby.

THE action was brought by the Appellants against the Respondents as endorsers of a promissory note for $2,350.62, made by a firm doing business under the name of Beale, Mellick & Dewitt. The defence relied upon was that the note in question was, previous to its maturity, delivered by Thomas Davenport, one of the Respondents, to the Appellants, to be sold by the latter, who were note-brokers, as it was, and that the Appellants afterward procured the note to be endorsed in the firm name of "Davenport Bros.," while Thomas Davenport was absent, by James S. Davenport, another of the Respondents, who was ignorant of the instructions which, as is alleged, were given to the Appellants by Thomas Davenport at the time he delivered the note to them, and that such endorsement was procured by an alleged false representation of William A. Odell, one of the Appellants, to the effect that Thomas Davenport would endorse the note were he at home, and that he usually did endorse notes of that kind left with the Appellants for sale.

. The referee found as facts, that within a few days after the delivery as aforesaid of the note in question to the Plaintiffs, Odell, one of the Plaintiffs, called at the Defendants' place of business. Thomas Davenport was then absent.

Odell found the Defendant, James S. Davenport, there, and requested him to endorse this note in the name of the Defendants' firm.

J. S. Davenport at first declined doing so, saying that Thomas Davenport attended to this part of the business, and that he knew nothing about it.

Odell then stated to him that Thomas Davenport was in the habit of endorsing the name of his firm on the paper of those makers; that he invariably did so ; that he would endorse this note if he were at home, and that if J. S. Davenport endorsed it he would find it all right when Thomas Davenport returned; that the Plaintiffs could sell the note if the Defendants endorsed it, but not otherwise.   The Defendant, J. S. Davenport, induced by these statements of Odell, then endorsed the note in the name of the firm.

In a day or two after J. S. Davenport thus endorsed the note, Thomas Davenport returned, and on being informed by J. S. Davenport of the representations and of the endorsement, expressed his dissatisfaction, and said he would not have endorsed it for five hundred dollars; and J. S. Davenport expressed indignation at having been induced to endorse the note by the statements, as above mentioned, of Odell.

The Defendants did not express dissatisfaction to the Plaintiffs as to the endorsement, or the means by which it was obtained, till it was ascertained that the makers were insolvent.

The referee reported in favor of the Plaintiffs for the balance due on the note, after deducting a payment made by the assignee of the maker, holding that the statements made by Odell were not such false representations as would invalidate the contract of endorsement, in that they were promissory ; in that the statements contained no warrant of the condition or ability of the makers of the note; in that the statement was not one that a person of ordinary prudence should have relied upon ; and in that the representations, in a legal sense, caused no damage to the Defendants, as they are in no worse position than if they had not sold the note, but had retained it till maturity.

The General Term of the First District reversed the judgment

of the referee, and ordered a new trial, and directed·that the testimony taken on the former trial might be read in evidence on the new trial.

The Plaintiffs appeal to this Court, stipulating that, if the order appealed from be affirmed, judgment absolute may be entered against them.

*Jas. C. Carter* for Appellants.

*Wm. W. Niles* for Respondents.

HUNT, J.—We are not at liberty to deny the finding of the referee, that the Defendants' endorsement of the note in suit was obtained by the false representations of Odell.

The representations were false, but they are not found to be fraudulent. Whether this question of fraud was one of fact which should be found by the referee, or whether it would be held to be a question of law under Bennett *v.* Judson (21 N. Y. R. 238), is not, in my view of the case, a material question. Assuming that the transaction was fraudulent, and that the representations were such as might well have deceived a prudent man; assuming, also, that a representation to one partner of what his associate would do, if present, comes within the rule on this subject (as to which see 1 Story's Eq. Jur. § 199), there is a further difficulty, which cannot be overcome.

This arises from the failure of the Defendants promptly to repudiate the endorsement, when informed of the means by which it was obtained. The absent partner returned to his place of business within a few days after the endorsement was obtained, and was informed of the means and representations employed by Mr. Odell to obtain it. Great indignation was expressed by the partners, among themselves, at his conduct.

No disaffirmance, however, of the transaction, no offer to return the money and take back the note, or even a disapproval or complaint of the means employed, was made to the Plaintiffs. The Defendants, on the contrary, received and retained the proceeds of the note, and were content to remain as they were, for a period of nearly three months. The insolvency of the maker, at that

period, occurred, and for the first time the Defendants then communicated to the Plaintiffs the complaint that their endorsement had been fraudulently obtained.

This will not do. It is the duty of a party who proposes to disaffirm, as fraudulent, a contract entered into by himself, his partner, or agent, to do it at once, upon the discovery of the fraud.

He must be ready and prompt in such disaffirmance. It will not do to keep the money in his pocket for three months, to deprive the other party of the opportunity of protecting himself, to await the chances of a successful performance of the fraudulent contract, and only to repudiate when the danger of loss becomes imminent.

Neither honesty, good faith, nor the principles of law, will justify such a course.

If the Defendants deemed themselves injured by the representations of Mr. Odell, it was their duty, upon the return of the absent partner, when the real facts were made known to all of them, at once to have tendered to the Plaintiffs the money received from them, and to have demanded a return of the note.

For illustrations of these principles, see Minturn v. Main, 3 Seld. 220, 227; Sar. & Sc. R. R. v. Row, 24 Wend. 74; Lloyd v. Brewster, 4 Paige, 537; Conner v. Henderson, 15 Mass. R. 319; Cutler v. Gilbreth, 53 Maine R. 176.

Upon this ground, I think, the judgment of the referee should be affirmed, and that of the General Term reversed.

That portion of the order directing that the testimony already taken might be read in evidence on the new trial was unauthorized and irregular. The new trial, as awarded by the General Term, was his right. He was entitled to it, without condition or qualification.

A direction that evidence of a certain character should be admitted was not a legal condition.

All the judges concurred.

Order for new trial reversed.