[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 86 
This action was brought against the executors of Cornelius K. Garrison to recover the possession of one hundred first mortgage bonds issued by the plaintiff, of which it claims to be the owner and entitled to the immediate possession. It is alleged in the complaint that the plaintiff on or about the 1st day of October, 1887, duly demanded of the defendants the delivery to it of the bonds, and that the defendants had failed and refused to deliver the same, or any of them to it; and relief is prayed that the defendants may be adjudged to deliver to the plaintiff the bonds, or that it may have judgment for $202,500, in case a delivery cannot be had, together with its damages and costs. The answer put in issue the plaintiff's right and title to the bonds, and claimed that the defendants were entitled to hold and possess the same under an agreement *Page 87 
between it and their testator, made on or about the 13th day of August, 1881.
The material facts are as follows: On the 13th day of June, 1881, the plaintiff and Cornelius K. Garrison entered into a contract, under seal, by which Garrison agreed to purchase five thousand tons of English steel rails, deliverable in San Francisco at as early a day as reasonably practicable, and agreed to sell and deliver to the plaintiff the rails so bought upon arrival there of each shipment upon receiving in cash the actual cost to him of the rails and the further sum of $100,000 in the first mortgage bonds of the plaintiff, and he agreed to furnish the necessary fish-plates, bolts, nuts, spikes and fittings for the rails, deliverable in San Francisco at the same time with the rails, and sell and deliver the same to the plaintiff upon the arrival of each shipment at that place at the net cost to him. And it agreed to purchase from him the rails, fish-plates, bolts, nuts, spikes and fittings upon arrival of each shipment at San Francisco, and pay for the same in cash and bonds as provided. It also agreed to deposit with Garrison, as a guarantee for the performance of the agreement on its part, three thousand of its first mortgage bonds for one thousand dollars each, one hundred of which bonds he was to retain, and he was to hold the remaining twenty-nine hundred bonds until it had taken and paid for the rails, fish-plates, etc., in full, including interest and all proper charges, provided that it might withdraw any part of the bonds upon paying to Garrison sixty per cent of their par value. It further agreed to give to Garrison the same bonus in its full-paid stock upon the one hundred bonds that he was to retain that he would be entitled to pro rata with the most favored purchaser of any of its bonds. Garrison was also to loan to it an amount equal to the difference between the cost to him of the rails, fish-plates, etc., and $200,000, the bonds deposited with him being held as security for such loan; and it agreed to purchase from Garrison the one hundred bonds mentioned, together with their pro rata of stock, and pay him therefor $100,000 at any time he might *Page 88 
elect to sell the same to it. In pursuance of that contract the three thousand bonds were delivered to Garrison, and he thus became obligated to furnish the steel rails, fish-plates, etc., as provided. It appears in evidence that these rails were expected to be purchased and that they could only at that time be purchased in England, and that they were to be shipped from that country by vessels to San Francisco. The negotiations in reference to the agreement and its performance were conducted mainly between Mr. Hogg, the president of the plaintiff, and Cornelius K. Garrison and W.R. Garrison, his son and general agent. English steel rails were easily purchasable in England in the summer of 1881, but it was difficult to get steamers to transport them to San Francisco. Cornelius K. Garrison died on the 1st day of May, 1885, and W.R. Garrison died on the 1st day of July, 1882; and this action was commenced on the 1st day of October, 1887, and the only person then living who had personal acquaintance with the main facts out of which the plaintiff's alleged cause of action arose, was Hogg, who was its main witness upon the trial.
It appears that on the 21st day of July, 1881, the plaintiff received back from Garrison four hundred of the bonds referred to in the agreement, but for what cause or upon what consideration they were surrendered by Garrison to it does not appear. The evidence tends strongly to show that during the two months after the execution of the contract, Garrison did very little, if anything, towards its performance. It does not appear that he had purchased any rails or that he had made any effort to purchase any, or to procure vessels to transport the rails when purchased. It does appear that Hogg, on behalf of the plaintiff, from time to time, urged performance of the contract, and that finally about the first day of August, Hogg, on behalf of the plaintiff and upon credit furnished by him, purchased the rails. On the thirteenth day of August, he notified Garrison that he had purchased them, and he then claimed that Garrison had broken the contract with the plaintiff and that he should hold him responsible, and he then demanded the surrender of the balance of the bonds remaining *Page 89 
in the hands of Garrison. He refused to surrender any of the bonds unless it consented that he should have the one hundred bonds which he was entitled to under the contract, and threatened to retain all the bonds unless it would consent to surrender the one hundred. Thereupon, there was a proposition from one of the parties to the other that the contract of June thirteenth should be canceled and surrendered, and that Garrison should have and retain one hundred of the bonds upon surrendering the remainder thereof.
The by-laws of the plaintiff provided for an executive committee who should possess, and exercise by a majority of its members, all the powers and duties of the board of directors when the board was not in session; and at a meeting of the executive committee held on the thirteenth day of August, the president was authorized to negotiate with Garrison for the cancellation and abrogation of the contract existing between him and the plaintiff, and to close the transaction on the terms proposed, in his discretion. It will be observed that in the negotiations between Hogg and Garrison both parties acted upon the supposition that the contract of June thirteenth was in force, and the resolution of the executive committe recognized that contract as existing.
In pursuance of the authority thus conferred upon him, Hogg entered into the following agreement with Garrison:
"For and in consideration of One Hundred Thousand Dollars in bonds of the Oregon Pacific Railroad Co. and six hundred shares full-paid stock (the receipt whereof is hereby acknowledged) paid by the Oregon Pacific R.R. to C.K. Garrison, the within agreement is hereby canceled and satisfied, and the Oregon Pacific R.R. Co. hereby acknowledges the receipt of twenty-five hundred bonds of One Thousand Dollars each, being the remainder of the three thousand bonds mentioned in the agreement hereto annexed."
Thereupon the agreement of June thirteenth was canceled, and Garrison surrendered to the plaintiff the remainder of the bonds, after retaining the one hundred to which he was entitled under the agreement. It paid to Garrison and his assignee *Page 90 
and his executors, after his death, the semi-annual interest coupons, the last being paid two days after the commencement of this action.
The plaintiff bases its right to recover these bonds upon the following grounds: (1) That the agreement of August 13, 1881, surrendering the bonds to Garrison, was without consideration and, therefore, void; and (2) that the contract was invalid for having been obtained by Garrison through duress.
As to the first ground: This was an executed agreement, and there is authority for saying that it was valid without any consideration. In Bishop on Contracts (§ 81), it is said: "Though a contract is without consideration, yet, if it is voluntarily and with full knowledge of the facts executed, the property in the thing, whether money or a chattel, is transferred, and it cannot be reclaimed. So that a consideration is not an essential part of an executed contract." And so it was substantially held in Maxwell v. Graves (59 Iowa 613).
But it is not needful to go so far in this case. It is quite clear that, upon the facts as they now appear (and assuming that they all appear), Garrison could not have maintained an action against the plaintiff based upon the contract of June thirteenth, for the reason that he had failed to perform the same on his part. There was room, however, for a claim, on his part, that the contract was still in force, and that on the thirteenth of August, he was still able to perform the same and to discharge the obligations thereof. It does not appear that, down to that time, the plaintiff had made any formal demand for the performance of the contract, or had notified him that, in case he did not perform, it would regard the contract as at an end. Without giving him such a notification, its president had, some two weeks before that time, made other arrangements for obtaining the rails, and on the thirteenth of August notified him that the plaintiff would hold him responsible for not performing his contract. He refused to assent to the nullification or cancellation of the contract of June thirteenth, unless the plaintiff would surrender to him one hundred of the bonds in his possession, and for the purpose *Page 91 
of procuring a cancellation of the agreement and the surrender by Garrison to it of the remainder of the bonds, it entered into the agreement of August thirteenth; and the cancellation of the first agreement and the mutual release of the parties therefrom furnished ample consideration for the contract of August thirteenth. (Bishop on Contracts, § 68; Cutter v. Cochrane,116 Mass. 408; Rollins v. Marsh, 128 id. 116; Perry v.Buckman, 33 Vermont, 7; Delacroix v. Bulkley, 13 Wend. 75;White v. Hoyt, 73 N.Y. 505; Tice v. Zinsser, 76 id. 549;McCreery v. Day, 119 id. 1; Manufacturing Co. v. Bradley,105 U.S. 175.) In Cutter v. Cochrane, it is said: "An agreement to rescind a previous contract imports that, until it is rescinded, it is recognized by both parties as subsisting and binding. The rescinding of a previous contract containing mutual stipulations, is a release by each party to the other. The release of one is the consideration for the release of the other, and the mutual releases form the consideration for the new promise, and are sufficient to give it full legal effect."
Therefore, taking into view all the evidence, we see no reason to doubt that the contract of August thirteenth surrendering the one hundred bonds to Garrison, was based upon a sufficient consideration.
As to the second ground upon which the plaintiff bases its action, to wit., that the contract of August thirteenth was invalid because it was procured from it by duress, and that the bonds were coerced from it by a threat on the part of Garrison that he would not deliver to it any of the bonds held by him unless the one hundred bonds were surrendered to him, we have to say: A contract obtained by duress is not ordinarily void but merely voidable, and it may be subsequently ratified and confirmed. (Doolittle v. McCullough, 7 Ohio State, 299;Lyon v. Waldo, 36 Mich. 345.) In 1 Parsons on Contracts (7th ed.) 446, it is said: "A contract made under duress is not, strictly speaking, void, but only voidable, because it may be ratified and affirmed by the party upon whom the duress was practiced." In 1 Addison on Contracts (Morgan's edition), *Page 92 
454, it is said: "Any agreement made under improper pressure is voidable. If a person having been constrained by duress to make a contract, afterwards voluntarily acts upon it, he thereby affirms its validity and loses the right to avoid it." In Chitty on Contracts (11th Am. ed. 273), it is said: "Clearly a contract made under duress would be available in favor of the parties suffering the duress and against the party affected by the same. * * * And so by our law a man who has entered into a contract under duress may either affirm or avoid such contract after the duress has ceased." See, also, Bishop on Contracts (§ 278).
The facts constituting the duress were immediately known to the plaintiff and it was its duty to act promptly in repudiating the agreement which it had been induced to enter into by duress. Instead of so doing it never repudiated the agreement until it commenced this action, more than six years after the agreement of August thirteenth had been entered into and the bonds had been surrendered to Garrison; and during all that time down to the commencement of this action, it paid the semi-annual interest coupons upon the bonds. Even if it was induced to pay the interest during the life-time of Garrison by promises on his part to extend financial aid in other ways to the plaintiff, the conduct of the plaintiff was, nevertheless, a complete and express ratification of the agreement of August thirteenth. If it surrendered its right to repudiate that agreement on account of duress it should have taken its remedy by holding Garrison to the agreement he made with it for financial aid; but it continued to pay the interest upon these bonds for several years after Garrison had failed to keep the alleged promise he had made for financial aid to the plaintiff and after all efforts and negotiations in that direction had ceased. During several years prior to the commencement of this action the payment of interest upon these bonds was entirely voluntary. It thus emphatically and repeatedly acknowledged the defendants' title to the bonds, and when this action was commenced it was too late to claim that they had been obtained by duress. *Page 93 
One entitled to repudiate a contract on the ground of duress should, like one who attempts to repudiate a contract on the ground of fraud, act promptly. (Schiffer v. Dietz, 83 N.Y. 300; Gould v. Cayuga County Nat. Bank, 86 id. 82; Baird v.Mayor, etc., 96 id. 567; Bruce v. Davenport, 3 Keyes, 472.)
There was, therefore, no error at the trial term in directing a verdict for the defendants. The essential facts upon which the defense existed were not in dispute. Our conclusion, therefore, is that it appears upon the undisputed evidence that the contract of August 13, 1881, was based upon a sufficient consideration, and that if it was obtained by duress it was subsequently ratified and confirmed.
The judgment should, therefore, be affirmed, with costs.
All concur.
Judgment affirmed.