## MYERS v. GREY et al.

(Supreme Court, Special Term, Kings County. May 14, 1910.)

1. HUSBAND AND WIFE (§ 171*)—MORTGAGE BY WIFE—DURESS.

If one purchasing property for the mortgagor at foreclosure sale could not have been compelled to perform his oral agreement to reconvey to the mortgagor upon payment of the amount advanced, that the purchaser compelled the mortgagor to give a second mortgage to secure an indebtedness from the mortgagor's husband before reconveying would not constitute duress.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 678; Dec. Dig. § 171.*]

2. HUSBAND AND WIFE (§ 171*)—MORTGAGE BY WIFE—CONSIDERATION.

If one purchasing property for another at foreclosure sale could not have been compelled to perform his oral agreement to reconvey to the mortgagor upon payment of the amount advanced, a second mortgage executed by the mortgagor to such purchaser securing an indebtedness of the former's husband to him in order to procure a reconveyance was not without consideration.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 675; Dec. Dig. § 171.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**3. TRUSTS (§ 100*)—CONSTRUCTIVE TRUSTS—BREACH OF ORAL AGREEMENT AS TO LANDS BOUGHT.**

An agreement to purchase at a mortgage foreclosure sale and hold the property for the mortgagor's benefit until advances made for purchasing were repaid is enforceable in equity, though it does not comply with the statute of frauds.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 151; Dec. Dig. § 100.*]

**4. HUSBAND AND WIFE (§ 171*)—MORTGAGE BY WIFE—CONSIDERATION.**

Since an oral agreement to purchase at mortgage foreclosure sale and reconvey to the mortgagor upon payment of the amount advanced was valid in equity, a second mortgage, given such purchaser by the mortgagor to secure payment of debts due him from her husband in order to procure a reconveyance to her, was without consideration.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 675; Dec. Dig. § 171.*]

**5. HUSBAND AND WIFE (§ 171*)—MORTGAGE BY WIFE—DURESS.**

If one purchasing at a mortgage foreclosure sale for the mortgagor's benefit was bound to reconvey, a second mortgage, which such purchaser compelled the mortgagor against her will to execute to secure her husband's debts to such purchaser in order to procure a reconveyance, was invalid.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 671–683; Dec. Dig. § 171.*]

**6. HUSBAND AND WIFE (§ 232*)—MORTGAGE BY WIFE.**

In an action to foreclose a mortgage executed to secure a bond to plaintiff's intestate, evidence *held* to show that the bond and mortgage were executed in consideration of the cancellation of a debt due on demand to intestate from the mortgagor's husband.

[Ed. Note.—For other cases, see Husband and Wife, Dec. Dig. § 232.*]

**7. PAYMENT (§ 24*)—CHARACTER OF PAYMENT—PAYMENT BY MORTGAGE.**

A bond and mortgage may be given in payment of a debt.

[Ed. Note.—For other cases, see Payment, Cent. Dig. §§ 28, 29; Dec. Dig. § 24.*]

**8. HUSBAND AND WIFE (§ 171*)—MORTGAGE BY WIFE—VALIDITY—DURESS.**

Even if one who purchased at foreclosure for the benefit of a mortgagor refused to reconvey as agreed until the indebtedness of the mortgagor's husband was paid by the execution of a mortgage to him, there would be no duress if the latter voluntarily agreed to pay their indebtedness to procure the reconveyance.

[Ed. Note.—For other cases, see Husband and Wife, Dec. Dig. § 171.*]

**9. MORTGAGES (§ 86*)—FORECLOSURE—ACTION—SUFFICIENCY OF EVIDENCE—DURESS.**

In an action to foreclose a mortgage executed with a bond to plaintiff's intestate who purchased for the mortgagor's benefit on foreclosure of another mortgage given by the mortgagor, evidence *held* to show that the mortgage in suit was given voluntarily.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1350, 1355, 1364; Dec. Dig. § 86.*]

**10. CONTRACTS (§ 270*)—VALIDITY—DURESS.**

One entitled to disaffirm a contract for duress must act promptly, as a contract or deed given under duress may be ratified by acquiescing therein for an unreasonable time.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1189, 1200; Dec. Dig. § 270.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by Florence M. Myers, administratrix, against James A. Grey, Jr., and others. Judgment for plaintiff.

J. G. Stevenson, for plaintiff.
Edward T. Hiscox, for defendants.

CRANE, J. It is conceded that Philip V. Myers bought this property at foreclosure sale for the benefit of the mortgagor, Sallie Malone Grey.

The property was being sold under a foreclosure of the first mortgage, and the owner, Mrs. Grey, being unable to buy it in, her husband, James A. Grey, Sr., applied to his long-time friend and business associate, Philip V. Myers, deceased, to bid at the sale, advance the purchase price, take title in his own name, and hold the property until the money could be repaid to him. Mr. Myers did as requested, bidding more than sufficient to cover the mortgage and expenses so that there was a balance of $597 coming to Mrs. Grey, which she, pursuant to the agreement with Myers, immediately assigned to him. The deed to Myers was dated December 22, 1903, but there was no change in the possession of the property, which the Greys continued to occupy. On June 28, 1905, Myers, at the request of Mrs. Grey and upon payment of the $3,000 advanced by him in this transaction, reconveyed the property to her sons, James A. Grey, Jr., and Joseph M. Grey, receiving also at this time from these grantees a bond and second mortgage on the same premises for the sum of $3,500.

Philip V. Myers is dead, and this action is brought to foreclose this second mortgage. The defense interposed is want of consideration and duress.

It is the claim of the defendants that, when demand was made of Mr. Myers to redeed the property, he refused to do so until he was paid not only the $3,000 advanced, but also a debt due to him from James A. Grey, Sr., amounting to $4,500, and that this second mortgage was given under the force and stress of these circumstances and for no other consideration.

If Myers could not have been forced to execute his oral agreement, there was neither duress nor lack of consideration in the giving of the mortgage to procure a reconveyance of the property. Mapes v. Snyder, 59 N. Y. 450; Norton v. Pattee, 68 N. Y. 144.

But Mrs. Grey had an interest in the property under foreclosure to protect, and an agreement to purchase at the sale and hold the property for her benefit until the advances could be repaid would be enforceable in equity, even though the agreement did not comply with the statute of frauds. Ryan v. Dox, 34 N. Y. 307, 90 Am. Dec. 696; Wood v. Rabe, 96 N. Y. 414, 48 Am. Rep. 640; Lathrop v. Hoyt, 7 Barb. 59; Bauman v. Holzhausen, 26 Hun, 505; Canda v. Totten, 87 Hun, 72, 33 N. Y. Supp. 962, J. Cullen's opinion at page 78 of 87 Hun (33 N. Y. Supp. 962).

If, therefore, there was no other consideration for this mortgage than a reconveyance of the property, or if the defendants were compelled against their will to execute the mortgage before Myers would give a deed, then this plaintiff cannot have judgment.

The plaintiff's intestate and James A. Grey, Sr., had previously transacted business together, and it is not disputed that at the time of the execution of the deed and mortgage Grey owed Myers, as a result of these transactions, about $4,500, exclusive of the $3,000 advanced on this property. The counsel for the defendants says that if this debt had been canceled, or time for payment extended, then there would have been a sufficient consideration for the mortgage; this is exactly what was done. All through the testimony the giving of this bond and mortgage by the sons of James A. Grey, Sr., is spoken of as a "payment" of the debt. The books of Myers were examined by Grey, and showed an indebtedness of $4,500; but after some talk and discussion it was agreed that if this mortgage was to be given the amount would be reduced to $3,500.

In no part of the testimony do I find it referred to as security for the debt; it is always referred to as a payment of the debt, and such it was, and such it was considered by Grey, Sr., for when, after Myers' death, Grey was asked how much he owed the estate, he said $600 or $700. How could he have gotten rid of his $4,500 obligation but by the payment and cancellation through the giving of this mortgage. The testimony is otherwise silent. As he and Myers continued to do business after June 29, 1905, this $600 or $700 debt must have been incurred subsequent to that date, and Grey so explains his testimony.

The bond and mortgage ran for three years, thus extending the time of payment which before was on demand.

A bond and mortgage, like stocks, railroad bonds, and other securities and property, may be given in liquidation of a debt.

Now as to the duress: Was the payment voluntary or involuntary? The only witness to duress is James A. Grey, Sr., whom it must be admitted is a decidedly interested witness. Myers, he says, absolutely refused to redeem the property unless this mortgage was given in payment of his (Grey's) indebtedness to him, and that the Grey boys gave the required mortgage under protest and in order to obtain the deed of the property to which they were entitled. It may be said that even the testimony of Mr. Grey is very meager indeed as to anything said or done by his boys or his wife; he appears to have been the real person in interest and authority.

This outrageous treatment of Myers seems to have made no difference in their relationships, for Mr. Grey testifies that he and Myers kept on doing business together thereafter just the same as before. On the eventful day when the debts were discussed and the mortgage executed, all the parties appeared to be very pleasant and friendly toward each other. McNiece, the lawyer who prepared the papers and was present during much of the discussion, did not hear any refusal on Myers' part to reconvey the property. Even if Myers did want all his claim against the Grey family settled at once, this would not constitute duress, if they, Grey, Sr., and his sons voluntarily agreed to pay.

I must and do find that settlement was voluntarily made. Is Mr. Grey's present statement to be relied on, or the one he made before suit was brought? He virtually is the sole witness for the defendants, is interested, has made contradictory statements, and upon testifying

against living witnesses is flatly contradicted.　Although this mortgage was executed in June of 1905, no steps were ever taken to cancel it because of duress or any other imperfection, and the first claim of any such defense is made four years after execution and after the mortgagee's death.　One entitled to repudiate a contract on the ground of duress should, like one who attempts to repudiate a contract on the ground of fraud, act promptly.　O. P. R. R. Co. v. Forrest, 128 N. Y. 83, 93, 28 N. E. 137.　A deed given under duress may be ratified by acquiescence for an unreasonable time.　Page on Contracts, § 269.

When the attorney for the administratrix of the estate of Philip Myers, deceased, Walter M. Chandler, sent for James A. Grey, Sr., in March of 1909, to inquire about this mortgage, Mr. Grey said (I quote Mr. Chandler's testimony):

"They had gotten the full consideration, that it was a good mortgage, and that if I would wait until the 1st of September that he would pay the mortgage."

The attorney waited, and in September, at Mr. Grey's request, he gave a further extension of two or three weeks.

Mr. Grey admits that he told Mr. Chandler that the mortgage was a good mortgage, but he says that he meant that the value was in the property; he also admits that he got the extensions and never made claim of any defects in the instrument until four months after his first interview with the estate's attorney.

On quite important and distinct matters Mr. Grey is squarely contradicted both by Mr. Chandler and by Mr. McNiece.

I therefore refuse to find that this mortgage was procured by duress or lacked consideration, but shall adopt the statement of Mr. Grey to Mr. Chandler:

"It is a good mortgage for full consideration."

Judgment for plaintiff, with costs.