ABELMAN v. INDELLI & CONFORTI CO.

(Supreme Court, Appellate Division, First Department. December 30, 1915.)

1. APPEAL AND ERROR ☞1002—REVIEW—VERDICT.
    On appeal the verdict must be considered as resolving conflicts in the evidence in favor of the successful party.

    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3935–3937; Dec. Dig. ☞1002.]

2. CONTRACTS ☞97—DURESS.
    Where, after a contract for excavation and concrete work for a building had been executed, plaintiff made payments thereunder, and for over two years did not make any claim that the money was paid under duress, any duress in the execution of the contract was waived; a contract procured under duress being voidable and not void.

    [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 442–446; Dec. Dig. ☞97.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. CONTRACTS ☞95—"DURESS"—WHAT CONSTITUTES.

> Threats by a contractor to file mechanics' liens on a building in case he was not paid do not constitute "duress"; the contractor having the right to adopt that remedy in case of nonpayment.

> [Ed. Note.—For other cases, see Contracts; Cent. Dig. §§ 431–440; Dec. Dig. ☞95.

> For other definitions, see Words and Phrases, First and Second Series, Duress.]

Appeal from Trial Term, New York County.

Action by Bernard Abelman against the Indelli & Conforti Company. From a judgment for plaintiff, and an order denying new trial, defendant appeals. Reversed, and complaint dismissed.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, DOWLING, and SMITH, JJ.

Menken Bros., of New York City (Mortimer M. Menken, of New York City, of counsel), for appellant.

Samuel N. Freedman, of New York City (I. Gainsburg, of New York City, of counsel, and Gerald B. Rosenheim, of New York City, on the brief), for respondent.

CLARKE, J. The plaintiff, as the assignee of the Han Construction Company, sues to recover $1,621, with interest from January 1, 1912, alleged to have been paid by said company to the defendant under duress. The Han Construction Company owned property on the northerly side of Tremont avenue, near Jerome, in the Bronx, and was engaged in the construction of a building. On January 9, 1911, it entered into a written contract with defendant for the excavation, digging of trenches, and stone and concrete work for the cellar at an agreed price of $2,400, which covered the work to a depth of four feet below the cellar, as is shown by the plans, and, in case the excavation was carried to a greater depth, it was provided that the defendant receive 19 cents per cubic yard for stone work and 25 cents per cubic yard for concrete work. Defendant was to be paid in installments as the work progressed; $700 when the second tier of beams was up, $700 when the fourth tier of beams was up, $700 when the building was finally inclosed, and $300 when the studding was in and brown mortar throughout the building. It further provided that the defendant should not be entitled to receive any sum whatever for any extra work, unless at the request of the Han Construction Company and upon its written consent. The defendant commenced work under said contract and proceeded for some weeks, when it stopped. It claimed that it had excavated all the trenches at four feet below the cellar; that it was ready to start the foundation, when an inspector of the building department made a test and gave instruction to go down at least six or eight or ten feet below the cellar, to excavate the trenches four feet wide, to have the concrete two feet six inches high and four feet wide, and the stone wall two feet six inches all the way through on a level with the cellar; that the parties had a conference in regard to the extra work, and that as a

---

result of that on March 7, 1911, a new contract in writing was entered into, which provided:

"We agree to do all the excavating of job Tremont Ave. 100 ft. E. Jerome, including all trenches for said building, for sum of one thousand ($1,000) dollars. Stone work 12 cents per cubic foot, labor and stone. Concrete 14 cents per cubic foot, labor and broken stone. It is understood that first contract to be destroyed."

[1] Under the first contract the defendant was to furnish the cement and sand. Under the second contract the Han Construction Company was to furnish said materials, defendant claiming that this was at the request of the Han Construction Company. There is no dispute that this second contract was made. The plaintiff, however, claims that it was coerced, because the defendant refused to proceed under the first contract; that the defendant claimed that it belonged to an association under whose by-laws it was forbidden to make contracts for a lump sum; that no member of the association would finish the job that had been commenced by one of its members, unless that member released its claims; that the defendant refused to release its claim, and that the Han Construction Company was unable to procure any other contractor to finish the job which the defendant commenced without such release upon its part; and that, in view of the building loan which it had contracted to obtain, payable as the building progressed, it was held up by the action of the defendant, and so was forced to consent to the abrogation of the first contract and the making of the second. While the evidence in support of these claims is strenuously denied by the defendant, there was evidence in support thereof, and as the jury decided in favor of the plaintiff we shall assume, in the consideration of this appeal, that the plaintiff's claim in this regard was established.

After the making of this new contract of March 7th, the defendant proceeded with its work, and completed the same, and received payment in full therefor, to wit, $3,038. The defendant claims that, even assuming the second contract was made under duress, it was ratified by the voluntary payment of the amounts due thereunder after the work was fully completed and accepted by the plaintiff. The plaintiff claims that the payments were not voluntary, but were also made under threats and by duress; the threats being that if the payments were not made the defendant would file a mechanic's lien against the building. The first payment was of $400 on April 14, 1911, about which Abelman testified as follows:

"On April 14th I gave him a check of $400. * * * I told Mr. Indelli, 'Here is $400 on account, and you come around at the end of the week, or early part of next week, I will give you another check.' * * * I said, 'You have presented a bill to me for $3,038.' I said, 'Do you know that I am overpaying you according to the contract, with my materials, an average of about $1,600?' He says, 'You know you have got a contract, and we went ahead and we did the work, and we want to get paid,' and I paid him every check. * * * The first time that was all said."

The second payment was $600. That was paid by check of April 21, 1911:

"I told Mr. Indelli—I said: 'You ought to be more reasonable now. Now the job is finished, you ought to come to an understanding. We have got a

contract of $2,400, and I think we ought to come to some understanding. You have got a new contract, and we have got to see what we can do.' He says: 'We have got a contract, and you have not signed it.' I said: 'Well, of course, I have not signed it.' I said: 'Now, you have got me now.' He said: 'You have not signed it.' And I paid him that check of $600. Q. What other conversation did you have with him? A. Well, this I don't remember, but on May 8th he came up for a check; he wanted $1,000. He came up and he says: 'Maurice, my partner, my brother, are fighting with me. They said: "You have got to go and collect that money that is before the inclosure payment. You have got to go, you have got to go and get that money."' I said: 'Well, you know, Mr. Indelli, you have got to give us a chance. I paid you so much money. I paid you pretty near $2,400 before the inclosure payment; what do you want? Give us a chance.' He said: 'I have got to have an order to the building loan man; otherwise I am going to file a lien to-morrow morning.' Well, I said: 'Indelli, what do you mean? I told you I have not got money to pay you any money,' because I am going to fight this out with him. He said: 'If you don't get me $1,000, I am going to file a lien to-morrow morning.' Well, I said: 'What do you mean, you are going to file a lien to-morrow morning? You will ruin the job.' He says: 'The partner says I have got to do so.'"

This payment was made by check May 8, 1911. Abelman further testified in reference to the other payments:

"Well, he came around, and it was about June 10th, and he wanted another check, and I said: 'Well, how much is coming to you?' He says: 'Well, you know we settled on the bill of $3,038 for labor work and furnishing stone.' * * * I said: 'Well, I paid you; just give you a check of $1,000, and gave you an order for $1,000, and now you want another check.' He says: 'Well, I have got to have it.' He says: 'My brother is pushing me to get the money from this job; they want the money.' Well, I said: 'You have to wait.' He said: 'I have got to have the money. If I don't get the money I am going to file a lien against the job.' Well, I give him a check of $200. * * * The next date was June 17th. He asked for a check. I said: 'I cannot give you any; I don't want to give you any.' He said: 'I have got to have a check before Saturday.' He says: 'If I don't get a check before Saturday, I am going to file a lien.' I said: 'You haven't filed liens right along.' I said: 'Aren't you getting your money right along? What do you want?' He said: 'I have to have a check then to settle up the job.' I said: 'I have given you a check; come around Saturday,' and I gave him a check of $138, making it $3,038."

He also paid on April 29, 1911, $100, and on May 27th, $600. The defendant denies that it made any threats to file a mechanic's lien. The Han Construction Company permitted the defendant to completely perform the contract, has paid the defendant in full, has retained the property acquired under the contract, and made no claim that the contract was void until after it had been completely performed. The witness Indelli testified on behalf of the defendant that the first defendant knew of the existence of the plaintiff's claim was when the summons was served, which was August 24, 1913, over two years after the completion of the contract.

[2, 3] In Oregon Pacific Railroad Co. v. Forrest, 128 N. Y. 83, at page 91, 28 N. E. 137, at page 139, Judge Earl, writing for the court, said:

"A contract obtained by duress is not ordinarily void, but merely voidable, and it may be subsequently ratified and confirmed. Doolittle v. McCullough, 7 Ohio St. 299; Lyon v. Waldo, 36 Mich. 345. In 1 Parsons on Contracts (7th Ed.) 446, it is said: 'A contract made under duress is not, strictly speaking,

void, but only voidable, because it may be ratified and affirmed by the party upon whom the duress was practiced.' In 1 Addition on Contracts (Morgan's Ed.) 454, it is said: 'Any agreement made under improper pressure is voidable. If a person having been constrained by duress to make a contract, afterwards voluntarily acts upon it, he thereby affirms its validity and loses the right to avoid it.' In Chitty on Contracts (11th Am. Ed.) 273, it is said: 'Clearly a contract made under duress would be available in favor of the parties suffering the duress and against the party affected by the same. * * * And so by our law a man who has entered into a contract under duress may either affirm or avoid such contract after the duress has ceased.' See, also, Bishop on Contracts, § 278. The facts constituting the duress were immediately known to the plaintiff, and it was its duty to act promptly in repudiating the agreement which it had been induced to enter into by duress. * * * *"

And the court affirmed a judgment directing a verdict for the defendants on the ground that, if the contract was obtained by duress, it was subsequently ratified and confirmed.

In Colon & Co. v. East 189th St. Building & Construction Co., 141 App. Div. 441, 126 N. Y. Supp. 226, this court, in denying leave to a surety company, which had bonded a mechanic's lien, to serve an amended answer alleging in effect that the contract upon which the plaintiff sued was obtained from the owner of the property affected by fraud and duress, consisting of threats to abandon work on his premises and to induce others to abandon the work, unless said owner would make the contract now sued upon, said:

"It is a fundamental and well-settled rule that one who would repudiate a contract on the ground of fraud and duress must act promptly, or he will be deemed to have elected to affirm it. Oregon Pacific R. R. Co. v. Forrest, 128 N. Y. 83, 93 [28 N. E. 137]; Strong v. Strong, 102 N. Y. 69, 73 [5 N. E. 799]. The contract alleged to have been induced by duress was executed on August 24, 1909, nearly 15 months before the motion to amend was made. The owner certainly would not be permitted at this late day to repudiate the contract, and the appellant can stand in no better position."

The defendant having completed its work under the contract of March 7th, it was an executed and not an executory contract. It had the right under the Lien Law to file a lien, and the only threats and duress in connection with the payments made by the plaintiff's assignor, as testified to, were statements made by the defendant that it would file a mechanic's lien unless such payments were made. In Lilienthal v. Bechtel Brewing Co., 118 App. Div. 205, 102 N. Y. Supp. 1051, this court said:

"What it is said they threatened to do was no more than to pursue a legal remedy to which they were entitled, and this does not constitute duress. * * * Finally, even if defendant had shown duress, it has effectually waived it. The rule is that, when a contract is sought to be avoided as having been procured by duress, the party claiming to have been wronged must proceed promptly. If he remains silent, keeps the property received, or recognizes the contract by making payments thereon, he will be held to have waived the duress."

In McGuire & Co. v. Vogel Co., 164 App. Div. 173, at page 176, 149 N. Y. Supp. 756, at page 758, Mr. Presiding Justice Ingraham says:

"It seems to me, however, clear that a mere threat to institute legal proceedings to recover a claim is not duress upon which can be based an action

to recover a sum of money thereafter voluntarily paid, and therefore the complaint states no cause of action."

I am of the opinion that the payments here sought to be recovered back were voluntary, and that the plaintiffs have not made out a cause of action.

It follows, therefore, that the judgment appealed from, and the finding of the jury that such payments were made under duress, should be reversed, and the complaint dismissed, with costs and disbursements to the appellant. Order filed.

INGRAHAM, P. J., and LAUGHLIN and DOWLING, JJ., concur.

SMITH, J. I concur in the result, on the ground of the delay in bringing the action.