In the Matter of the Judicial Settlement of the Account of Proceedings of ABE SWILLER, as Executor of PHILIP SWILLER, Deceased.

ABE SWILLER, as Executor, etc., Appellant; ANNA SWILLER and Others, Respondents.

First Department, May 4, 1923.

Executors and administrators — accounting — disbursement for legal fees made necessary by objections to account should not be put into account filed — executor may testify to transactions tending to show that bond and mortgage in testator's name actually belonged to testator's father and was no part of assets — executor did not have fair trial.

The amount paid for legal services claimed by an executor to have been made necessary by objections filed to the account has no place in the account since the services of counsel are payable out of the estate in such an event only when allowed by the surrogate.

An executor who is charged with having received the amount of a bond and mortgage in the testator's name, which he contends was in fact the property of the testator's father and was, therefore, no part of the assets of the estate, and was not inventoried by him as an asset, is competent to testify as to his personal knowledge respecting the ownership of the bond and mortgage and also as to personal communications and transactions which he had with the testator pertaining thereto.

On a review of the entire proceedings, taking into consideration especially that the referee excluded much competent evidence concerning the ownership of the bond and mortgage, it is held that a fair trial was not accorded to the executor and that justice requires that a new trial be granted.

APPEAL by Abe Swiller, as executor, etc., from certain portions of a decree of the Surrogate's Court of the county of New York, entered in the office of said Surrogate's Court on the 11th day of July, 1922, confirming the report of a referee appointed to hear and determine all questions arising upon the settlement of the account of the appellant as executor of Philip Swiller, deceased.

*Charles R. Rose* [*Charles Snow Kellogg* with him on the brief], for the appellant.

*Leopold Freiman*, attorney for objectant, respondent.

*Thomas O'Callaghan*, special guardian for all the children.

MERRELL, J.:

The referee found and the surrogate has decided that the executor's account should be surcharged with the sum of $3,065 alleged to have been received by the executor upon a bond and mortgage which stood in the name of said Philip Swiller at the time of his decease. Testator was a resident of the county of New York at the time of his death and on May 20, 1919, his will was admitted to probate and letters testamentary issued thereon to the executor named in said will. On the 31st day of March, 1921, the executor verified his petition and also his account and the same was thereafter filed with the surrogate. The petition shows that the decedent left him surviving his widow and four children. Under the terms of decedent's will his widow was given a legacy of $25 and the balance of testator's property was devised and bequeathed to his four children. The executor's account, as originally filed, showed that practically all of the assets of the estate had been distributed to persons entitled thereto and that there was at such time a balance in the hands of the executor amounting to $19.33. The account shows that the deceased left an estate of upwards of $10,000, and that over $8,000 thereof had been paid to decedent's children under and pursuant to his will. The balance of the expenditures were for debts, funeral expenses, and $260 for legal services and disbursements. Decedent's widow at the time of the filing of the account had not received her legacy of $25. There is much to indicate that before the account was filed the executor went over the affairs of the estate with decedent's widow and that she was apprised of the condition thereof and also in respect to the bond and mortgage

which stood in the name of the decedent at the time of his death, but which was claimed by his father, Harry Swiller.

Upon the return day of the citation objections were filed to the account by the widow and also by the special guardian of decedent's children. In connection with said objections 'it is alleged that at the time of decedent's death there was unpaid on the aforesaid bond and mortgage the sum of $3,000, which sum had since the death of decedent been paid to the executor. Very little evidence was taken before the referee. The first hearing was had on the 1st of November, 1921, and hearings on adjournment on December 12, 1921, and January 11, 1922. The stenographer's minutes show that it was stipulated that the referee receive $20 per hour for his services, and $20 for adjournments; that the stenographer furnish three copies of the testimony and proofs, and that his charge therefor should be at the rate of forty-five cents per folio; that an attendance fee of $10 should be charged where the aggregate at the per folio rate should not equal $10, and a similar charge of $10 for adjournments where notice of which was not given two hours in advance of the time set, and that the stenographer's fees should be paid by the estate in the first instance, and later taxed as the surrogate might direct. Upon the last adjournment, counsel for the petitioner stated that he had never entered into the stipulation above referred to and that it was never made. The referee stated that, although he was present, he had no personal recollection as to the matter and would abide by the record of the stenographer. It should not ordinarily take over two hours to take all the evidence submitted to the referee. When the evidence was practically all in the petitioner offered to file an amended account, which was accepted by the referee. This amended account stated that under date of September 17, 1914, one Charles B. Warner executed the bond and mortgage in question to secure the sum of $5,000; that $1,500 had been paid on January 10, 1915; $300 September 17, 1917, and a like amount annually until September 17, 1921; that all of these installments so paid had been turned over to Harry Swiller, the father of the deceased, and none were claimed by the decedent; that after decedent's death Warner paid the balance due, amounting to $3,065, and requested the executor to execute a satisfaction of the mortgage, which he did, and the executor also marked the mortgage paid; that a check was delivered to the executor which was indorsed by him and delivered to Harry Swiller, decedent's father; that the executor made investigations and knew that the decedent was only the nominal owner of the bond and mortgage; that the executor as such did not take possession of the moneys, but turned them

over to the rightful owner. In the amended account there is inserted in Schedule C an additional sum of $500 for legal services "rendered necessary by objections to account." This sum had no place in the account, the services of counsel being payable out of the estate, in such event, only when allowed by the surrogate.

Upon the question at issue very little evidence was given. The burden, of course, rested upon the objectors to establish the fact that the bond and mortgage in question belonged to the deceased and that the money paid thereon came into the hands of the executor. This burden was easily met by placing in evidence the bond and mortgage and taking the testimony of the executor to the effect that he received the $3,065 due thereon. In fact, counsel for the executor consented that the bond might be offered in evidence. The executor testified that the aforesaid sum of $3,065 had been paid April twenty-seventh, after decedent died. After this *prima facie* proof was made the attorney for the executor made a lame attempt to establish the executor's case. What few competent questions were asked were ruled out by the referee. The executor claimed that the deceased came to this country about eight or nine years before his father; that his father bought a farm in New Jersey; that his father paid the purchase price, but that the title to the farm was placed in the name of the decedent, as the decedent had been in this country for a long period of time and knew the ways of the people. He also claimed that when the farm was sold the bond and mortgage in question was taken back for part of the purchase price, and that it was held by the deceased in trust for his father, who received all of the payments of principal and interest paid by the mortgagor up to the time of decedent's death. Although the executor stated in his amended account that his investigation disclosed beyond any question that the bond and mortgage were actually the property of decedent's father and that such fact was known to decedent's widow and others, no attempt was made upon the trial to call any witnesses except the executor to prove such facts or to interpose any documentary proof to substantiate the executor's contention. In his brief counsel for the executor states that numerous persons were familiar with the facts; that the testator had admitted to various persons that his father owned the farm, and that the farm was bought by the father with his own money and that the testator had no interest therein. It is also asserted that when the farm was put on the market for sale the testator made the same explanation to brokers and others making offers to buy, and also to neighbors and friends, and that decedent's wi... had made similar admissions. The brief then states that many of these witnesses

20

First Department, May, 1923.                    [Vol. 205

were actually in court before the referee, but on account of the rulings of the referee which clearly disclosed that he would not receive any further evidence as to who owned the mortgage in question, that they were not sworn.  It does not appear whether the executor had any documentary proof of the facts claimed. Upon the hearing the referee ruled out practically every competent question asked to the executor tending to prove the facts claimed by him.   For instance, the executor was asked to explain what he did with the money which he received.   The question was objected to and ruled out by the referee, to which ruling exception was taken. Many questions were asked of the executor concerning the payment of the former installments which were ruled out.   To the rulings of the referee counsel for the executor duly excepted.   Among such questions are the following: " Q. Did you collect the prior installments here, Mr. Swiller?   Q. When you found this mortgage or bond in the papers of the deceased, did you make any investigations about this matter?   Q. Did your father buy this farm?   Q. Were you present when the farm was bought?   Q. Whom did this farm belong to?   Q. Did you see the money paid for this farm?   Q. Were the contents of this account discussed between you and Anna Swiller? "

While the answers to many of the above questions would not have had great probative weight, the rulings of the referee thereon apparently so discouraged the attorney for the executor that the testimony of no other witness was offered.   There is some question as to the competency of some of the above questions.   It has been held that when the account of an executor or administrator is contested and objections have been filed on the ground that certain payments therein set forth were improperly made, the executor thereby becomes an interested party and cannot testify concerning his knowledge of the facts which might tend to establish the claim.   (*Matter of Smith*, 153 N. Y. 124.)   On the other hand, the evidence of an executor in such a case has been very often taken and relied upon to prove the facts necessary to establish such a claim.   (*Moller* v. *Paulovico*, 190 App. Div. 1; *Paulovico* v. *Moller*, Id. 3; *Matter of Goepel*, 200 id. 678.)   In the last-mentioned case the executor testified respecting certain payments made to the deceased by a company which employed him, which payments were in excess of his salary, thereby entitling the company to reimbursement.   This evidence, of course, tended to establish a claim which the executor had paid.   It has also been held that when an executor has paid a debt, credit for which is contested, the creditor whose debt has been so paid is a competent witness. (*Matter of Lese*, 170 App. Div. 744; *Matter of Frazer*, 92 N. Y. 239; *Matter of Mulligan*, 82 Misc. Rep. 336; *Matter of Herrington*, 73

id. 182.)   The record does not show but what the testator's father, Harry Swiller, is alive.   If living his testimony would be competent. The general rule adopted by Heaton in his work on Surrogates' Courts (4th ed. p. 1770) is that: " An executor cannot testify to transactions with his testator in defending his account from attack by residuary legatees." (*Matter of Gabriel,* 44 App. Div. 623; affd., 161 N. Y. 644.)   While I cannot agree with the reasoning of the courts in some of the above cases, the recognized rule seems to be as stated by Heaton.   In most cases the personal representative of the deceased is the widow, husband or a child of the deceased, and ordinarily the person most familiar with the testator's affairs.   It, therefore, follows that the executor is generally the one who has most intimate knowledge concerning the claims which are presented.   If an executor knows positively that a claim is just and meritorious and happens to be the only one having such knowledge he apparently is not safe in paying the claim, for thereby he will be closing his mouth and prevent the proof thereof in case of contest.   The case at bar, however, differs somewhat from the situation which obtains when a claim is paid by an executor or administrator out of the decedent's money and appears as paid in the account.   It is claimed by the executor in this case that the bond and mortgage were never assets of the estate and that the executor had personal knowledge concerning the transaction and knew that the bond and mortgage belonged in equity to the father of the testator.   The case is somewhat analogous to the situation which very often arises where securities such as coupon bonds are found in a safe deposit box of a testator, but which do not belong to the testator.   It would not seem in a case where an executor does not inventory such bonds and place them in his account that he should be precluded from testifying as to his personal knowledge respecting their ownership and also respecting personal communications and transactions which he has had with the deceased pertaining thereto.

One cannot read the proceedings in the case at bar without being convinced that a fair trial was not accorded to the executor, and that justice requires that a new trial be had.

The decree appealed from should be reversed, and the proceeding remanded to the surrogate for a rehearing, without costs in this court as to any party.

CLARKE, P. J., SMITH, PAGE and FINCH, JJ., concur.

Decree reversed and the proceeding remanded to the surrogate for a rehearing, without costs in this court as to any party. Settle order on notice.